UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-318(2) (SRN/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

STEVEN RENA STONE, JR.,

        Defendant.

**CORRECTED POSITION OF
THE UNITED STATES WITH
RESPECT TO SENTENCING**

The Probation Officer has calculated a non-career offender guideline range of Level 19/Category VI = 63-78 months.  PSR ¶ 178.  Contrary to Probation's recommendation, the Court should find that the defendant is a career offender based on his two prior felony drug trafficking convictions.  PSR ¶¶ 82, 96.  In that event, the career offender guideline range would be Level 29/Category VI = 151-188 months.  U.S.S.G. § 4B1.1.[1]

The Defendant is a Career Offender.  The career offender provision provides in pertinent part that "[a] defendant is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).  Section 4B1.2(b) defines a "controlled substance offense" as:

---

[1] The defendant also has one other prior conviction that ordinarily would qualify as a career offender predicate:  a 2001 robbery conviction (PSR ¶ 83).  However, that conviction falls within the 15-year "look-back" period only because the defendant served an additional four years beginning in 2001 for a revocation based on a new offense.  But that new offense also was the basis for the revocation in a separate case:  the defendant's 1999 conviction for drug distribution (PSR ¶ 82).  The Probation Officer appears to be correct that the revocation sentence can be applied to only one of the two affected prior convictions for the purpose of computing criminal history points.  U.S.S.G. § 4A1.2(k), application note 11. The Probation Officer applied it to the drug conviction rather than the robbery conviction. Thus, the robbery conviction is too old to qualify as a career offender predicate.

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

"Application Note 1 to § 4B1.2 explains that 'controlled substance offenses also include 'aiding and abetting, conspiring, and _attempting_ to commit such offenses.''" _United States v. Maldonado_, 864 F.3d 893, 897 (8th Cir. 2017) (emphasis added). Importantly, the binding commentary to § 4B1.2 notes that "in determining whether an offense is a crime of violence or controlled substance for the purposes of § 4B1.1 (Career Offender), _the offense of conviction_ (_i.e._, the conduct of which the defendant was convicted) _is the focus of inquiry_." U.S.S.G. § 4B1.2, application note 2 (emphasis added).

The Probation Officer has concluded that the defendant's 1999 conviction in Cook County, Illinois selling crack cocaine is a career offender predicate. PSR ¶ 82. The government agrees and the defendant does not contend otherwise.

However, the Probation Officer has concluded that the defendant's 2008 conviction in Minnesota for second-degree drug sale is not a career offender predicate because the term "sell" under Minnesota law "appears to be overly broad as it includes more conduct than the term 'controlled substance offense' as defined at USSG § 4B1.2(b)." PSR ¶ 96. The government objected to the preliminary PSR on this point. In the addendum, the Probation Officer responded to the government's objection by stating that, because the Minnesota drug statute, Minn. Stat. § 152.021, defines "sell" as including "an agreement or offer to sell," it is broader than the definition of "controlled substance offense" in section 4B1.2. PSR at A.2.

2

Although the government acknowledges that four judges in this District recently have declined to treat drug convictions under Minnesota law as career offender predicates,[2] those decisions should not be followed for the reasons set forth below.

As an initial matter, the Sentencing Guidelines specifically provide that in determining whether an offense is a controlled substance offense and therefore a career offender predicate, "the offense of conviction (*i.e.*, the conduct of which the defendant was convicted) is the focus of inquiry." U.S.S.G. § 4B1.2, application note 2. Here, there is no dispute that the defendant was convicted under Minnesota law of the actual sale of cocaine, not just an offer to sell cocaine. The PSR, to which there is no objection, states that investigators made three controlled purchases of crack cocaine from the defendant, then executed a search warrant at his residence where additional distribution quantities of cocaine and crack were seized. PSR ¶ 96. Since the conduct of which the defendant was convicted did not involve a hypothetical offer to sell, and since the focus of inquiry is supposed to be on the defendant's actual conduct, there should be no question that the defendant's Minnesota drug conviction qualifies as a career offender predicate.

In making this argument, the government acknowledges the conflicting directive that courts should look to "how the law defines the offense and not in terms of how an

---

[2] *See United States v. C. J. Bettis*, 17-CR-0048 (WMW/TNL), sentencing transcript at pp. 22-26; *United States v. Arthur Lee Powell*, 16-CR-187 (PJS/KMM), sentencing transcript at pp. 15-18; *United States v. Mickiah Latrell Jackson*, 17-CR-121 (MJD/DTS); *United States v. Kenneth Deonte Jarrad Cribbs*, 16-CR-322 (JRT/KMM). All but one of these decisions (*Bettis*) were rendered prior to the Eighth Circuit's ruling in *United States v. Thomas*, 886 F.3d 1274 (8th Cir. 2017), discussed below, which clarified the legal test to be applied in making these decisions.

individual offender might have committed it on a particular occasion." *Johnson v. United States*, 135 S. Ct. 2552, 2557 (2015).   Yet the controlling decisions in this area are constantly evolving, and the commentary to section 4B1.2 quoted above has not been rescinded despite the contrary case law.   Thus, the government wishes to preserve the argument that the quoted commentary controls the decision in this case.

Minnesota's Drug Sale Statute is Not Overbroad.   Without waiving this threshold argument, the Court should hold that Minnesota's drug statute is not overbroad.   The Eighth Circuit recently ruled that a drug conviction under a Missouri statute that, like Minnesota's statute, defined "sell" as including an "offer to sell" qualified as a "controlled substance crime."   In *United States v. Thomas*, 886 F.3d 1274 (8th Cir. 2017), the Court surveyed the case law and concluded that, "to meet the Guidelines definition [of "controlled substance offense"], a state law must require something more than a mere offer to sell."   *Id.* at 1276. The "something more" can be "an attempt, bona fide offer showing intent, or overt acts furthering that intent."   *Id.*   Based on a Missouri Court of Appeals opinion from 2002, the Court concluded that the Missouri statute required the government to prove "more than just uttering words in order to constitute an offer."   *Id.* at 1277.   Consequently, the Missouri statute was not overbroad and the defendant's conviction counted as a "controlled substance offense."   *Id.*

Under the Eighth Circuit's analysis in *Thomas*, Minnesota's first-degree drug sale statute is not overbroad. Subdivision 1 of Minnesota's first-degree controlled substance crime prohibiting "sale crimes" provides in pertinent part that "[a] person is guilty of controlled substance crime in the first degree if . . . (3) on one or more occasions within a

4

90-day period the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing heroin."  Minn. Stat. § 152.021 (2014).

Under Minnesota law "sell" means:

 (1) to sell, give away, barter, deliver, exchange, distribute or dispose of to another, or to manufacture; or

(2) to offer or agree to perform an act listed in clause (1); or

(3) to possess with intent to perform an act listed in clause (1).

Minn. Stat. § 152.01, subd. 15a (2014).

In Minnesota, a defendant may be convicted of controlled substance sale by offering to sell only when he makes a bona fide offer to sell drugs—one that is not made "in jest or as a prank."  *State v. Bautista*, 1998 WL 422221, at *3 (Minn. Ct. App. July 28, 1998) (unpublished op.).  *See also State v. Rosillo*, 2001 WL 881279, at *2 (Minn. Ct. App. July 31, 2001) (unpublished op.) (citing March 1989 subcommittee hearing discussions regarding First Amendment concerns during statute's enactment and stating "an 'offer' to sell [must] include some conduct 'consistent with fulfilling that offer'"), *aff'd without opinion*, 651 N.W.2d 499 (Minn. 2002).  For a conviction predicated on an offer to sell, the state must prove some conduct "corroborat[ing] the genuine nature of [the defendant's] offer."  *State v. Lorsung*, 658 N.W.2d 215, 219 (Minn. Ct. App. 2003).

Thus, Minnesota law requires a "genuine offer" in order for liability to attach under an offer to sell theory.  In *Thomas*, the Eighth Circuit held that a "bona fide offer showing intent" is sufficient.  886 F.3d at 1276.  In the government's view, there is no difference

between a genuine offer and a bona fide offer.  The terms are synonymous.  Accordingly,

under the standards set forth in *Thomas*, the Minnesota drug sale statute is not overbroad.

In reaching the contrary conclusion that Minnesota law criminalizes mere offers to

sell drugs with no intent, Judges in this District have relied on a single ambiguous

paragraph in the Minnesota Court of Appeals' *Lorsung* decision, and have ignored contrary

language contained in the same opinion.  The language relied upon is as follows:

> We conclude that the language of Minn. Stat. § 152.01, subd. 15a is
> unambiguous.  It states that offering to sell is equivalent to selling.  Minn.
> Stat. § 152.022 is similarly unambiguous and contains no specific-intent
> requirement.  The legislature is free to criminalize certain conduct without
> regard to the actor's intent.

*Lorsung*, 658 N.W.2d at 218.

Judges in this District have interpreted these four sentences as holding that a person

could be convicted of selling drugs under an "offer to sell" theory of liability even if the

person at no time had the intent to follow through with the sale.  *E.g.*, *United States v. C.

J. Bettis*, 17-CR-0048 (WMW/TNL), sentencing transcript at p. 25; *United States v. Arthur

Lee Powell*, 16-CR-187 (PJS/KMM), sentencing transcript at p. 18.  A close reading,

however, shows that the *Lorsung* court never actually so held.

The Lorsung panel first stated that "offering to sell is equivalent to selling."  This is

a truism, as the definitional portion of the statute so states this proposition.  But that

sentence of the opinion does *not* say that a conviction for offering to sell is a strict liability

offense that requires no intent.   To the contrary, if offering to sell drugs is *equivalent* to

actually selling drugs, and we know that one cannot be convicted of selling drugs unless

they intended to do so, then offering to sell must also contain an intent element.  To

6

illustrate the point, no one would contend that a person could be convicted for unintentionally distributing drugs, such as by transferring a package to another thinking it contained clothing instead of drugs.   Clearly established Minnesota law prevents such a result by requiring that the defendant have knowledge (or belief) that the item transferred is a controlled substance.  *E.g.*, 10A Minn. Practice, CRIMJIG 20.08 (6th ed.) (knowledge is an element of the offense of drug sale).

The next sentence in *Lorsung* says that a different statutory provision, "Minn. Stat. § 152.022 is similarly unambiguous and contains no specific-intent requirement."   There are two problems with this statement.  First, the court uses the term "specific-intent" rather than "intent."  But "the most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e) (2nd ed. 2003), quoted in *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012).  So, if the Court was saying that one can be convicted of selling drugs – under either an actual sale or offer to sell theory – without specifically intending to violate the law, that too is a truisim. Drug dealing is a general intent crime.  *E.g., United States v. Hicks*, 635 F.3d 1063, 1070 (7th Cir. 2011).  One only has to have the general intent to accomplish the physical act of transferring drugs; not the specific intent to violate the law or accomplish some ancillary purpose.  So this sentence of *Lorsung* does not say that there is no (general) intent requirement for the offense of offering to sell drugs.

If one were to assume that the *Lorsung* court did not mean to use the term "specific intent," but only meant to use the term "intent" (or "general intent"), then there would be

a second problem.   The term was used in the context of describing what Minn. Stat. §
152.022 requires or does not require:  "Minn. Stat. § 152.022 is similarly unambiguous and
contains no specific-intent requirement."    But Minn. Stat. § 152.022 is the statute that
makes it a crime to sell drugs.  If this sentence is construed as saying that one can be
convicted of selling drugs even if they had no (general) intent to sell drugs, then the
statement is untenable and is contradicted by other well established provisions of
Minnesota law.  *E.g.*, 10A Minn. Practice, CRIMJIG 20.08 (6th ed.).

Finally, the sentence, "[t]he legislature is free to criminalize certain conduct without
regard to the actor's intent" not only falls far short of holding that the offense of offering
to sell drugs requires no intent whatsoever, but also needs to be put in context.  In support
of this proposition, the *Lorsung* court cited *State v. Kjeldahl*, 278 N.W.2d 58, 61 (Minn.
1979).   But *Kjeldahl* involved the distinction between specific intent and general intent.
*Kjeldahl* merely held that:

> It has long been settled that the legislature may forbid the doing of an act and
> make its commission a crime without regard to the intention or motive of the
> actor.  *State v. Reps*, 302 Minn. 38, 46, 223 N.W.2d 780, 786 (1974).  Such
> is the case with the offense of escape. . . . Quite clearly, the statute does not
> include a requirement of <u>specific intent</u>.  Rather, the only intent required to
> constitute the crime of escape is the intent to do the act which results in the
> departure from custody.

*State v. Kjeldahl*, 278 N.W.2d 58, 61 (Minn. 1979) (emphasis added) (footnote omitted).
In context, the quoted sentence from *Lorsung* simply states yet another truism that some
crimes are general intent crimes and others are specific intent crimes.

Thus, a close reading of *Lorsung* shows that it does not hold that a person can be
convicted of offering to sell drugs when that person had no (general) intent to commit the

act.  At most, it can be read as holding that there is no specific intent requirement in drug cases, which is an uncontroversial proposition.

Other language in the *Lorsung* opinion confirms that even the *Lorsung* panel itself did not think that a conviction could be based on an insincere offer to sell drugs.  "Appellant corroborated the *genuine nature of her offer* [to sell drugs] by meeting with the CI and accepting the money.  This is enough to support her conviction." *Lorsung*, 658 N.W. 2d at 219 (emphasis added).  Significantly, the *Lorsung* court vacated the defendant's separate conviction for theft by swindle as being inconsistent with the conviction for offering to sell drugs.  *Id.* The theft by swindle conviction of course was based on the theory that the defendant never intended to supply any drugs but only offered to do so as a ruse to obtain the buyer's money.  If that conviction had to be vacated because it was inconsistent with the offer to sell conviction, then the offer to sell conviction logically must embody the requirement that the defendant had the intent to sell the drugs at least at *some* point during the course of the criminal activity.  Under the Eighth Circuit's recent *Thomas* decision, this is enough for such a conviction to count as a career offender predicate. *Thomas*, 886 F.3d at 1276.

Other Circuits likewise have concluded that state drug laws that include offers to sell within the definition of "sell" are not overbroad for career offender purposes.  In *United States v. Bryant*, 571 F.3d 147 (1st Cir. 2009), the First Circuit construed a similar New York statute that prohibited the attempted sale of a controlled substance.  Like the Minnesota statute, the New York statute defined "sale" to include offers to distribute.  *Id.* at 158 (quoting N.Y. Penal Law § 220.00(1) ("'Sell' means to sell, exchange, give or

dispose of to another, or to offer or agree to do the same.")  Citing New York case law, the Court  held that "it is well-established under New York law that in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell—*i.e.*, that the defendant had both the intent and ability to proceed with the sale."  *Id*. (internal quotation and citation omitted).  Because a conviction under the New York statute would have required proof of an "*intent* to proceed with a sale," the First Circuit found that "the New York conviction qualifies as a predicate offense under USSG § 4B1.2."  *Id.* at 158.

Similarly, in *United States v. Evans*, 699 F.3d 858 (6th Cir. 2012), the Sixth Circuit addressed a claim that Ohio's inclusion of an offer to sell drugs fell outside the same Guidelines definition.  *Id.* at 866.  Like Minnesota law, the Ohio statute requires that an offer to sell be accompanied by an intent to sell drugs. *Id.* at 867. The Court therefore concluded that the statute contained the necessary *mens rea* and substantial step to constitute an attempted distribution that satisfies Section 4B1.2's definition.  *Id.* at 867-68. *But see United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir. 2017) (finding Texas controlled substance delivery statute that includes an offer to sell does not qualify as a controlled substance offense under the Guidelines but without analyzing whether bona fide intent required).

Based on the standards set forth in *Thomas*, and on a proper reading of *Lorsung*, the Court should find that the defendant qualifies as a career offender.

An alternative basis for concluding that the defendant is a career offender rests on a separate line of cases.  Even if the Court were to read *Lorsung* more broadly than the

government reads it, it would not be enough that a person *theoretically* could be convicted of the sale of drugs, as that term is defined in Minn. Stat. § 152.01, subd. 15(a), by doing nothing more than making an offer to sell drugs.  To the contrary, the United States Supreme Court has cautioned that the categorical approach "is not an invitation to apply legal imagination to the state offense." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013), quoted in *United States v. Pettis*, 888 F.3d 962, 965 (8th Cir. 2018).  Rather, "there must be a realistic probability, not a theoretical possibility" that a person could be convicted for conduct that does not meet the requisite threshold. *Moncrieffe*, 569 U.S. at 191.

The Eighth Circuit recently applied this test in the analogous context of what constitutes a violent felony under the Armed Career Criminal Act.  In an en banc decision, the Eighth Circuit ruled that, when evaluating state case law, the focus is "on the conduct at issue in the state decision rather than isolated *dicta* . . ." *United States v. Swopes*, 886 F. 3d 668, 671 (8th Cir. 2018) (en banc); *see also Pettis*, 888 F.3d at 965.  Ultimately, the Eighth Circuit looks to whether the defendant can point to any case that actually upheld a conviction based on conduct that falls below the requisite threshold.  *Pettis*, 888 F.3d at 965; *see also United States v. Maldonado*, 864 F.3d 893 (8th Cir. 2017).[3]

With the correct test in mind, the theoretical possibility that a person could be convicted under Minnesota law of the crime of drug sale by making a mere offer to sell

---

[3]  In *Pettis*, the defendant argued that a conviction for robbery under Minnesota law does not qualify as a violent felony under the ACCA because the statute allegedly does not require the use of sufficient physical force.  Relying on the *facts* of cases construing the robbery statute, as opposed to isolated *dicta*, the Court held that Minnesota case law confirms that a conviction for robbery under Minnesota law requires the use of sufficient physical force.  *Pettis*, 888 F.3d at 965-66.

drugs, without more (should the Court construe the statute that broadly), is beside the point. There is no case in which a Minnesota court actually has upheld a conviction based on a mere offer to sell, with nothing more.  Rather, in *Lorsung*, the defendant did not just make an offer to sell drugs, she also "prearranged a time and place to meet, as well as the price and amount of methamphetamine to be exchanged." *Id.* at 218.  She also "appeared at the agreed-to place at the agreed-to time and accepted the money." *Id.*  Under those facts, the conviction was upheld.   Again, it is the *facts* that matter for purposes of this type of analysis. *Swopes*, 886 F.3d at 671.

Likewise, in *State v. Hebrink*, 2003 WL 21384828 (Minn. Ct. App. 2003), an unpublished opinion, the defendant did far more than just make an offer to sell drugs.  He also met with the customer (an undercover officer) at an agreed upon location, discussed the specific drug buy, accepted the customer's money, and promised he would return with the drugs. *Id.* at *3. Under those specific circumstances, the conviction was affirmed. *Id.*

Not only is there no case where a conviction was affirmed based on the defendant doing nothing more than making an offer to sell drugs, it is difficult to imagine such a case ever being prosecuted at all.  For example, suppose a defendant were to tell an undercover officer "I will sell you cocaine."  But when the undercover officer later called repeatedly to arrange a deal, the defendant would not even answer the phone.  It is virtually inconceivable any such case would ever be charged, let alone result in a conviction and then be affirmed on appeal.

The unlikelihood of a successful prosecution based on a mere offer to sell drugs, with nothing more, is borne out empirically.  It has been more than 15 years since the

*Lorsung* and *Hebrink* decisions were issued.  Yet there have been no subsequent cases dealing with the *mens rea* in offer to sell cases.  If there had been any successful prosecutions in the last 15 years of a defendant for merely offering to sell drugs, without more, surely there would be additional decisions on the subject.  The reason for the absence of any such decisions is found in the *Lorsung* opinion itself, where the panel noted that:

> The attorney for the state further agreed that, for the sake of future administrative ease, prosecutors should treat this situation as "either/or," rather than attempting to convict a defendant in appellant's position with both crimes, offering to sell and theft by swindle.

Lorsung, 658 N.W.2d at 219.  In other words, the state agreed 15 years ago not to charge defendants under an offer to sell theory unless it could prove that the defendant had the intent to actually sell the drugs at some point during the transaction.  Theft by swindle prosecutions, in contrast, would be reserved for situations where the defendant *never* intended to supply the offered drugs.

Thus, the absence of any case upholding a drug sale conviction under Minnesota law based on a mere offer to sell drugs, without more, provides an alternative basis for concluding the Minnesota drug statute is not overbroad and that the defendant is a career offender.

Sentencing Recommendation.  Defendant Stone is exactly the type of defendant the career offender provision of the Sentencing Guidelines was designed to address.  As the PSR notes, this is Stone's sixth felony drug conviction and his ninth felony conviction overall.  PSR at A.4.  He committed the instant offense just 108 days after his release from

prison for a different felony drug conviction. *Id.* He has 21 criminal history points, well above the 13 needed to reach Criminal History Category VI. *Id.*

The instant offense was serious. Stone traveled to Chicago and obtained 436 grams (15 ounces) of cocaine, most of which he planned to sell to co-defendant Jimmie McGowan. PSR ¶ 20. He had two "ride-alongs" in the car with him for cover. *Id.* When he got stopped by police on the return trip, he let one of the ride-alongs take the fall for the drugs. *Id.* The defendant's true responsibility for the drugs was revealed only through the monitoring of a federal wiretap on McGowan's phone. *Id.*

The defendant's five prior drug convictions and sentences of up to 55 months (PSR ¶ 96) did not deter him from re-offending in this case. He has shown repeatedly that he is likely to re-offend. A sentence within the career offender guideline range of 151-188 months is fully warranted and necessary to protect the public from this repeat offender.[4]

Dated:  August 13, 2018

Respectfully submitted,

ERICA H. MacDONALD
United States Attorney

*s/ Jeffrey S. Paulsen*

BY: JEFFREY S. PAULSEN
Assistant U.S. Attorney
Attorney ID No. 144332

---

[4] In the event the Court does not apply the career offender guideline, a sentence well above the non-career offender guideline range is still appropriate for the reasons set forth herein. The government has separately moved for an upward departure or variance from the non-career offender guideline range.